IN THE MATTER OF THE PETITION OF ELIAKIM FULLER, TO VACATE AN ASSESSMENT, ETC.

*Contracts made by public officers—their validity depends upon the authority of the officer, and is not affected by his intentions or belief.*

On December 12, 1871, the Commissioners of Central Park passed a resolution authorizing their treasurer to carry into execution, by contract or otherwise, the regulating, grading, surveying, paving and improving of a certain portion of One-Hundred-and-Fifty-fifth street. Thereafter, and prior to June 17, 1872, the proposal of one Cummings for the regulating and grading of the said street was accepted, and a formal contract was directed to be prepared. On that day, the Department of Public Works assumed, under chapter 872 of 1872, exclusive control over the said work, and thereafter, and on July 12, the Commissioner of Public Works awarded the contract to Cummings, deeming it his duty to do so, because his bid had already been accepted by the Commissioners of the Central Park.

On an application to vacate an assessment laid to cover the cost of the improvement, on the ground that the Commissioners of Central Park had no authority to delegate to their treasurer the discretion confided to them by the legislature:

*Held,* that whether or not their action in so delegating their power to their treasurer was unauthorized, need not be considered, as the contract was in fact made, not by him, but by the Commissioner of Public Works.

That the fact that the latter entered into the contract because he believed that Cummings was entitled to it by virtue of the previous action of the Commissioners, was immaterial, as the validity of his act was in no way dependent upon his intentions or belief.

APPEAL by the Mayor, &c., of the City of New York, from an order of the Special Term, vacating an assessment for regulating, grading, &c., One-Hundred-and-Fifty-fifth street, from Ninth Avenue to the Hudson River.

Evidence was given by the petitioner tending to show that on December 12, 1871, the Commissioners of the Central Park adopted a resolution as follows:

"*Resolved*, That the treasurer be authorized, on behalf of this department, to carry into execution, by contract or otherwise, as authorized by chapter 565 of the Laws of 1865, the regulating, grading, surveying, paving and improving of One-Hundred-and-Fifty-fifth street, from the Boulevard (road or public drive)."

That in pursuance of this and subsequent resolutions, the treasurer, on December 16, 1871, directed the chief engineer to prepare plans and specifications for the regulating and grading of the street. The engineer did so, and submitted the same to the treasurer. The treasurer thereupon invited proposals for the work of regulating and grading of the street, which were received about May 1, 1872. Within a short time thereafter, the proposal of John P. Cummings was accepted, and the chief engineer was directed to prepare the formal contract for the work; this formal contract was prepared and ready for execution previous to June 17, 1872, and its terms, &c., approved by the treasurer. On June 17, 1872, the Department of Public Works, assuming the authority under chapter 872 of the Laws of 1872, took possession of the improvement of streets and avenues north of Fifty-ninth street, and thereafter, the Commissioner of Public Works, deeming it his duty, for the reason that the contract had been awarded to Cummings by the Central Park Commissioners, and without any further examination on his part, or invitation to bidders, &c., or alteration of the plan or specifications of the work, executed on July 12, 1872, the formal contract with John P. Cummings, for the work of regulating and grading the street.

The assessment was vacated at the Special Term, the justice holding that, "The Commissioners of the Central Park could not delegate the powers intrusted to them by the law to their treasurer or any other officer."

*Francis Lynde Stetson*, for the appellant.

*James A. Deering*, for the respondent.

BARRETT, J.:

We agree with the court below, that the Central Park Commissioners were originally authorized to make the improvements in question. By the act of 1865 (ch. 565) these commissioners were vested with exclusive jurisdiction " to lay out streets, roads, public squares and places within that part of the city of New York to the northward of the southerly line of One-Hundred-and-Fifty-fifth street." The intention, undoubtedly, was to cover this street. We also agree that the commissioners retained this power until its transfer to another department, under an act to which we are about to refer.

But we do not concur in the opinion that the assessment should be vacated, because the commissioners directed the execution of the work by their treasurer. It is not necessary to consider the question whether this was an unauthorized delegation of power, for the reason that the work was not done by their treasurer, but by the Commissioner of Public Works. This fact seems to have been overlooked. It appears that before any work was done, and, indeed, before the contract was made, exclusive jurisdiction over the subject was transferred to the Department of Public Works. (Laws 1872, ch. 872.) The contract was thereupon made by the commissioner of that department and the work done under his sole authority. It is true that the commissioner entered into this contract because of his belief that one Cummings was entitled to it under the previous action of the Park Department. But that is immaterial. The important fact is that he duly exercised his authority, under the existing law. As was said by JOHNSON, J., in *Sander* v. *Plass* (28 N. Y., 476), " jurisdiction does not depend upon the intention of the officer or tribunal, undertaking to act in a given case. The question is, does the law authorize the act?" (See, too, *State* v. *Jersey City*, 3 Dutch., 493; *Davis* v. *Bruce*, 82 Ill., 542.)

In our judgment, the work for which this assessment was laid was done by the Commissioner of Public Works, in conformity to law.

The various other objections made by the petitioner were properly overruled.

The order should therefore be reversed, with $10 costs, and disbursements of the appeal, and the application denied.

Davis, P. J., and Ingalls, J., concurred.

Order reversed, with $10 costs, and disbursements, and application denied.